**GIRARD SHARP LLP**
Adam E. Polk (State Bar No. 273000)
apolk@girardsharp.com
Simon S. Grille (State Bar No. 294914)
sgrille@girardsharp.com
Nina Gliozzo (State Bar No. 333569)
ngliozzo@girardsharp.com
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Sean Greene (State Bar No. 328718)
**GIRARD SHARP LLP**
222 Pacific Coast Highway, Floor 10
El Segundo, CA 90245
Telephone: (415) 544-6453
sgreene@girardsharp.com

*Attorneys for Plaintiff*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES MILLER, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | **DEMAND FOR JURY TRIAL** |
| PENTAGON FEDERAL CREDIT UNION, VERISK ANALYTICS, INC., AND LEAD INTELLIGENCE, INC. | |
| Defendants. | |

CLASS ACTION COMPLAINT
CASE NO.

## NATURE OF THE ACTION

1.     Pentagon Federal Credit Union ("PenFed") offers consumers instant quotes on a variety of financial services, including home financing services, after they complete forms on PenFed's website, www.Penfed.org, by entering personally identifiable information ("PII") and other private, sensitive information about themselves and their financial histories.

2.     Verisk Analytics, Inc. ("Verisk") and Lead Intelligence, Inc. ("Lead Intelligence") sell software marketed under the business name "Jornaya" that records consumer interactions with a website in real time. Website owners can use this software by adding the Jornaya javascript[1] into the source code of their webpages. Doing so permits both Verisk and Lead Intelligence *and* the website owner to record a visitor's keystrokes and other communications and actions on the website.

3.     PenFed has embedded the Jornaya software in the computer code on the parts of its website devoted to its home financing services offerings. Implementing the Jornaya software has allowed both companies to surreptitiously observe, record, store, and use visitors' keystrokes, mouse clicks, and other electronic communications, including their entry of PII and other private, sensitive information.

4.     When users seeking a financial services quote for PenFed's home financing offerings enter private information on Penfed.org, PenFed shares those communications with Verisk and Lead Intelligence in real time via the Jornaya software before notifying users or obtaining their consent. The communications PenFed shares with Verisk and Lead Intelligence include users' private personal and financial information, such as first and last name, zip code, email address, phone number, annual income, monthly housing payment amount, property value, credit score, IP address, and other categories of sensitive, personal information. Jornaya purports that its software increases the value of "leads" visiting the

---

[1] JavaScript is a programming language commonly used in website development to add features and functions to a website.

1

CLASS ACTION COMPLAINT
CASE NO.

websites of its customers by collecting and providing information about each lead in real time to them for purposes of converting such leads into actual clients.

5.     By wiretapping website users' communications, Defendants PenFed, Verisk, and Lead Intelligence ("Defendants") violate the California Invasion of Privacy Act ("CIPA") and invade Plaintiff's and Class members' privacy rights in violation of the California Constitution.

6.     Plaintiff James Miller used the PenFed website to initiate an application for a home loan, entering his PII and other sensitive, private information into the online forms at Penfed.org. During each of Plaintiff's visits to the relevant sections of PenFed's website, Defendants PenFed, Verisk, and Lead Intelligence recorded his electronic communications and actitivies in real time and used the intercepted data to capture his PII and other private, sensitive information—including his first and last name, email address, type of loan needed, property use, purchase price, home buyer status, and credit score—all without the consent CIPA requires.

7.     Plaintiff brings this action on behalf of himself and a class of all Californians whose electronic communications were intercepted through PenFed's use of the Jornaya software on its website.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of state different from at least one Defendant.

9.     This Court has personal jurisdiction over Defendants because each of the Defendants purposefully availed itself of the laws and benefits of doing business in California, and Plaintiff's claims arise out of each of the Defendants' forum-related activities. Furthermore, a substantial portion of the events giving rise to Plaintiff's claims occurred in this District.

CLASS ACTION COMPLAINT
CASE NO.

10.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.

## THE PARTIES

11.     Plaintiff James Miller ("Plaintiff", "James Miller", or "Miller") is a citizen of the State of California and resides in Burbank, California.

12.     Defendant Pentagon Federal Credit Union is a Virginia company with its principal place of business in McLean, Virginia.

13.     PenFed is the nation's second-largest federal credit union and offers, among other financial services, checking, credit cards, personal loans, mortgages, auto loans, and student loans.

14.     PenFed has over 2.8 million members globally (including all 50 states and Washington, DC). In 2021, according to President & CEO James Schenck, PenFed "achieved the strongest financial results in our 86-year history." That year, PenFed reached $32.5 billion in assets, originated $32.1 billion in loans, and received over $1.15 billion in net revenue.[2]

15.     PenFed does business throughout California and the entire United States.

16.     PenFed owns and operates the website www.Penfed.org.

17.     Defendant Verisk Analytics, Inc. ("Verisk") is a New Jersey corporation with its principal place of business in Jersey City, New Jersey.

18.     Verisk markets itself as providing "expert data-driven analytic insights."[3] Verisk boasts that its "proprietary platformed analytics, advanced modeling, and interpretation" allows it to "deliver immediate and sustained value to [its] customers."[4]

---

[2] https://www.penfed.org/about-penfed.

[3] https://www.verisk.com/.

[4] https://www.verisk.com/about/.

CLASS ACTION COMPLAINT
CASE NO.

19.     Defendant Lead Intelligence, Inc. ("Lead Intelligence") is (or was) a Delaware corporation with its principal place of business in Conshohocken, Pennsylvania.

20.     Lead Intelligence's most recent Bloomberg page states that it "develops enterprise software," "offers a lead management platform that connects lead generators and lead buyers," and "provides lead authentication, origin, and history for marketing firms of all sizes."[5]

21.     Verisk's most recent Annual Form 10-K, filed with the United States Securities and Exchange Commission on February 28, 2023, describes Verisk's December 16, 2020 acquisition of Lead Intelligence, Inc. as follows: "On December 16, 2020, we acquired 100 percent of the stock of Lead Intelligence, Inc. ('Jornaya'), a provider of consumer behavioral data and intelligence, for a net cash purchase price of $124.9 million. The acquisition added Jornaya's proprietary view of consumer buying journeys to our growing set of marketing solutions for the insurance and financial services markets, as well as provide customers with the intelligence and agility to time and tailor interactions based on actual in-market behaviors. Jornaya has become part of the underwriting & rating category within our Insurance segment."[6]

22.     Exhibit 21.1 of Verisk's Form 10-K lists the company's subsidiaries as AIR Worldwide Corporation; Insurance Servies Office, Inc.; ISO Services, Inc.; Wood Mackenzie Holdings Limited; Wood Mackenzie Limited; and Xactware Solutions, Inc.[7] Lead Intelligence is not listed.[8]

23.     Verisk and Lead Intelligence claim that the Joranya software is "the leader in behavioral data, marketing intelligence, and compliance with a proprietary view of more than 500 million consumer journeys every month." The Jornaya website further represents

---

[5] https://www.bloomberg.com/profile/company/0565845D:US#xj4y7vzkg.

[6] https://investor.verisk.com/financials/sec-filings/sec-filings-details/default.aspx?FilingId=16448627.

[7] *Id.*

[8] *Id.*

CLASS ACTION COMPLAINT
CASE NO.

that "[c]ompanies work with us to receive early behavioral buying signals on their customers and prospects," which in turn "improves the timing, messaging, and efficiency of their marketing outreach."[9]

24.    In connection with its services to website operators, Verisk and Lead Intelligence provide a Jornaya product called "LeadiD," which monitors and records website users' activity on a webpage. LeadiD purportedly increases the value of leads generated on third party websites by independently documenting the information each lead provides and harvesting additional information about them such as IP address.

## FACTUAL ALLEGATIONS

**I.    Verisk and Lead Intelligence Offer LeadiD Lead Generation Software.**

25.    Defendants Verisk and Lead Intelligence provide a variety of "real time" products under the business name Jornaya for companies that generate online leads or that engage in telemarketing.

26.    Although the Jornaya website refers to itself as being "A Verisk Business,"[10] the Terms of Use on the website purport to constitute a legally binding agreement between Jornaya users and "Lead Intelligence, Inc. d/b/a Jornaya".[11]

27.    Among other products and services, Verisk and Lead Intelligence offer a Joranya product called LeadiD.

---

[9] https://www.jornaya.com/company/.

[10] https://www.jornaya.com/.

[11] https://www.jornaya.com/terms-of-use/.

CLASS ACTION COMPLAINT
CASE NO.

28.     The Jornaya website describes LeadiD as a "unique identifier that's generated the moment a customer lands on a webpage where [the] script is installed." LeadiD purports to "provide qualified leads that are prime to convert" by "**witness[ing] [the customer's] interactions and collect[ing] data related to their experience . . . as a customer continues their journey on [the] site**."[12]

  

**LeadiD Lets You Provide Your Lead Buyers With A Transparent History of the Consumer Journey**

**LeadiD Captures Consumer Consent + Behavior For Every Lead for Lead Buyer Transparency**

**Expand Your Reach By Joining Our Growing Network Of Publishers, Lead Sellers + Performance Marketers**

29.     The Jornaya website says that one of the key features and benefits of LeadiD is that it "**captures a detailed view of the actions the customer took on the lead form and the journey the lead took**" so that companies buying leads can make informed decisions about lead purchases and "re-invest spend from lower-performing segments to optimize budgets + drive higher ROI."[13]

30.     The Jornaya website advertises the various "real time" data points that LeadiD can acquire, including the "origin" of users, "duration" filling out the form, and the number of competitors who also received the lead:

---

[12] https://www.jornaya.com/products/leadid-create (emphasis added).

[13] https://www.jornaya.com/products/leadid-intelligence (emphasis added).

6

CLASS ACTION COMPLAINT
CASE NO.



31.    The Jornaya website instructs its business partners to "implement the Jornaya campaign script" to their webpages to start capturing leads.[14] As soon as the LeadiD script is added, Verisk and Lead Intelligence automatically capture the information submitted in the respective forms and otherwise observed from users' sessions.

32.    The code allows Verisk and Lead Intelligence to record the keystrokes (including substantive and meaningful words, phrases, and numeric combinations and values), mouse clicks, data entry, and other electronic communications and actions of visitors to websites where the code is installed. It also allows Verisk and Lead Intelligence to track the "website of origin" (the website from which a user navigated to the website using LeadiD, *i.e.*, part of the visitor's internet browsing history), amount of time spent on the website, geographic location of the visitor, and other information described above.

33.    Verisk and Lead Intelligence, in turn, provides this data to their clients in the form of "leads," which their clients then use for their own marketing purposes.

---

[14] https://docs.jornaya.com/v1/docs/getting-started-with-create.

CLASS ACTION COMPLAINT
CASE NO.

34.    For example, in connection with promoting its products and solutions to mortgage industry clients, "Jornaya, A Verisk Business," tells them to "Optimize Every Lead + Protect Your Portfolio," and further explains, "Consumers who are in the market for a new Mortgage or Refi generally fund with the first or second lender that successfully engages them. What if you could know the behavior and intent behind every Refi lead you buy? Or, the moment when an existing customer enters the market for a new Mortgage? Leading Mortgage Lenders rely on the Jornaya Data Network to maximize lead acquisition and portfolio retention."[15]

35.    The recording of keystrokes, mouse clicks, data entry, and other electronic communications and actions begins the moment a user accesses or interacts with a webpage using LeadiD.[16]

36.    In a 2017 study by Princeton University researchers concerning similar session recording technology, the researchers noted that "the extent of data collected by these services far exceeds user expectations; text typed into forms is collected before the user submits the form, and precise mouse movements are saved, all without any visual indication to the user."[17]

37.    All videos of customer data are hosted on the servers of Verisk and Lead Intelligence, not the servers or computers of Verisk's and Lead Intelligence's clients. Accessing the video of a website visitor's interactions requires a unique URL link provided by Verisk and Lead Intelligence. The URL link directs Verisk's and Lead Intelligence's business partners to a web server where the video can be viewed. The link corresponds with a unique ID and a "certificate" which are generated and issued by Verisk and Lead Intelligence.

---

[15] https://www.jornaya.com/capabilities/mortgage/.

[16] https://www.jornaya.com/products/leadid-create.

[17] https://freedom-to-tinker.com/2017/11/15/no-boundaries-exfiltration-of-personal-data-by-session-replay-scripts/.

CLASS ACTION COMPLAINT
CASE NO.

38.     The Jornaya "patented LeadiD technology now resides on more than 55,000 different websites where consumers evaluate some of the biggest purchase decisions of their lives."[18] Verisk and Lead Intelligence advertise that the Jornaya software "witnesses billions of major purchase events every year across banking, mortgage, insurance, education, and more."[19]

39.     Verisk's and Lead Intelligence's business model involves entering into mutually beneficial financial partnerships with various companies. Pursuant to these relationships, Verisk and Lead Intelligence sell the Jornaya software and related services, such as lead generation, to their partners, thereby earning revenue. Their partners also benefit from the services by, among other things, enhancing their marketing efforts with potential customers, or "leads," who indicate an interest in their various businesses.

**II.     PenFed Uses the Jornaya LeadiD Software.**

40.     PenFed offers a variety of financial services in the areas of checking and savings, credit cards, auto loans, mortgage and home equity loans, personal loans, and student loans. PenFed's home financing services include loans to finance the purchase of a home, home refinancing options, and home equity loans.

41.     To obtain a rate or initiate an application for any of PenFed's home financing services, a consumer fills out a form online at Penfed.org. Each of these forms request similar information on the user's identity, including name, street address, email address, phone number, and credit score.

---

[18] https://www.jornaya.com/company/our-data/.

[19] https://resources.jornaya.com/pdf/consumer-behavior-insider-april-2021.

CLASS ACTION COMPLAINT
CASE NO.

42.    The LeadiD code records and collects users' substantive communications and data entered in each application under the "Mortgage & Home Equity" tab, highlighted in red boxes below.



43.    LeadiD also collects data that users input if they navigate to the application via the "Get Started" and "Get My Rates" buttons, highlighted in the red box below.



10

CLASS ACTION COMPLAINT
CASE NO.

44.    On the PenFed "Buy a Home" webpage, users are prompted to learn more about the services offered by clicking the "Get My Rates" button.



45.    After clicking on the "Get My Rates" or "Get Started" button, LeadiD records as users are prompted to fill out various data fields, including the following:

    a.  First and Last Name

    b.  Email Address

    c.  Mobile Number

    d.  Zip code

    e.  Military Status

    f.  Loan Purpose

    g.  First Time Home Buyer Status

    h.  Property Value/Sales Price

    i.  Down Payment

    j.  Type of Refinance

    k.  Mortgage/Debt Balance

    l.  Cash Out

CLASS ACTION COMPLAINT
CASE NO.

m. Lock Period

n. Credit Score

o. Planned Date of Purchase

p. Real Estate Agent Use

q. Property Type

r. Property Use

s. Loan Type

t. Any Previous VA Loan

u. Exempt From VA Funding Fee

v. Property Taxes

w. Homeowners Insurance

46. Similarly, if users navigate to a form through the "Loan Application" flow, LeadiD records all information inputted as users fill out the following data fields:

a. First and Last Name

b. Email

c. Phone

d. Zip Code

e. Type of Loan Needed

f. Status of Home Buying Process

g. Type of Property

h. Property Use

i. Purchase Price

j. Down Payment Amount

k. First Time Home Buyer Status

l. Credit Score

m. Military Status

n. Real Estate Agent Use

47.     Users are not asked or required to consent to a Privacy Policy before providing the aforementioned information. Specifically, users are not asked or required to consent— nor have they given their consent— to Verisk's and Lead Intelligence's access and recording of their sessions on PenFed's website before inputting various categories of PII and other sensitive, private information.

48.     PenFed has used LeadiD on Penfed.org's "Mortgage & Home Equity" tabs and pages since approximately June 26, 2021.

49.     LeadiD's code is embedded into the source code of PenFed's website, as shown in the red boxes below:

CLASS ACTION COMPLAINT
CASE NO.

```
377
378  <form id="mortgage-lead-contact-jornaya">
379      <input id="leadid_token" name="universal_leadid" type="hidden" value=""/>
380      <input id="nmlsId" name="nmlsId" type="hidden" value=""/>
381      <input id="leadSource" name="leadSource" type="hidden" value="PFDigitalMortgage"/>
382      <input id="campaign" name="campaign" type="hidden" value=""/>
383      <input type="hidden" id="mcid" name="mcid" value=""/>
384
385      <script>
386          if($_GET("s_cid")!=null)
387          {
388              $("#campaign").val($_GET("s_cid"));
389          }else if( ($.cookie("s_cid") != null && $.cookie("s_cid") != undefined) && $.cookie("s_cid").length > 0){
390              $("#campaign").val($.cookie("s_cid"));
391          }
392          if( ($.cookie("LeadSource") != null && $.cookie("LeadSource") != undefined) && $.cookie("LeadSource").length > 0){
393              $("#leadSource").val($.cookie("LeadSource"));
394          }
395          if( ($.cookie("nmlsId") != null && $.cookie("nmlsId") != undefined) && $.cookie("nmlsId").length > 0){
396              $("#nmlsId").val($.cookie("nmlsId"));
397              if( $.cookie("LeadSource") == null || $.cookie("LeadSource") == undefined) || $.cookie("LeadSource").length == 0){
398                  $("#leadSource").val("LOVanityPage");
399              }
400          }
401          if( ($.cookie("s_ecid") != null && $.cookie("s_ecid") != undefined) && $.cookie("s_ecid").length > 0){
402              var ecid = $.cookie("s_ecid");
403              if(ecid.length >0) {
404
405                  var ca=0;
406                  if(ecid.indexOf('|')>0)
407                      ca = ecid.split('|');
408                  }else if(ecid.indexOf('%7C')>0){
409                      ca = ecid.split('%7C');
410                  }
411                  if(ca.length>0){
412                      ecid = ca[1];
413                  }
414                  $("#mcid").val(ecid);
415              }
416          }
417          function $_GET(param) {
418              var vars = {};
419              window.location.href.replace( location.hash, '' ).replace(
420                  /[?&]+([^=&]+)=?([^&]*)?/gi, // regexp
421                  function( m, key, value ) { // callback
422                      vars[key] = value !== undefined ? value : '';
423                  }
424              );
425
426              if ( param ) {
427                  return vars[param] ? vars[param] : null;
428              }
429              return vars;
430          }
431      </script>
```

50.     An ordinary consumer would not know—and nothing on the face of Penfed.org gives any indication—that their answers to the aforementioned information prompts are being recorded or shared with a third party.

51.     Without the consent of users, PenFed enables Verisk and Lead Intelligence to monitor users' communications and interactions with the site as they provide various categories of PII and other private, sensitive information onto the relevant forms on its website during the application process across home financing offerings, including:

      a.  First and Last Name

      b.  Email Address

      c.  Mobile Number

CLASS ACTION COMPLAINT
CASE NO.

     d.  Zip Code

     e.  Employment Status

     f.  Military Status

     g.  Credit Score

     h.  Down Payment Amount

     i.  Property Value

     j.  Property Use

52.    At no point is a user asked or required to consent to a Privacy Policy or any other type of disclosure before providing PII.

53.    To access a rate for a property loan, for example, it is only *after* the consumer already has provided PII and other private, sensitive information to Defendants, *all of which has been recorded in real time*, that PenFed prompts the consumer to "accept" its general Privacy Policy:

> ☐ By checking this box, you certify that you have read, understand, and accept the <u>Privacy Policy.</u> You are also providing consent to PenFed under the Fair Credit Reporting Act to obtain information from the credit bureaus for the purposes of providing you with a preliminary interest rate estimate. You further understand that you must sign all loan documents electronically.

54.    While PenFed's Privacy Policy includes representations relating to its general collection and use of information across various actual and hypothetical circumstances, consumers are not prompted to agree to this Privacy Policy—which does not sufficiently disclose Verisk's and Lead Intelligence's real-time interception and recording of visitors' website sessions at any rate—until *after* the interception has already occurred, and users' PII and other private, sensitive information has *already* been captured without their knowledge or consent. In other words, even if a user reaches the point where PenFed asks for consent and chooses not to agree and leave the website, his or her information has already been captured and intercepted in real time.

55.    PenFed's disclosures fail to adequately notify visitors that their website communications and actions to that point have been intercepted. PenFed's dislosures also

CLASS ACTION COMPLAINT
CASE NO.

fail to adequately notify these visitors that if they answer additional questions, their communications and activity will continue to be intercepted.

56.     PenFed knows that LeadiD captures the keystrokes, mouse clicks, and other communications and actions of visitors to the home financing services sections of its website. PenFed pays Verisk and Lead Intelligence to do so and to supply that information.

57.     Pursuant to a business agreement with Verisk and Lead Intelligence, PenFed enabled LeadiD by voluntarily embedding the Jornaya software code on the aforementioned portions of PenFed's website.

58.     As currently deployed, LeadiD, as used by PenFed, functions as a wiretap.

**III.     Defendants Wiretapped Plaintiff's Electronic Communications**

59.     Within the last year, Plaintiff James Miller used the PenFed website to initiate an application for a home loan.

60.     During Plaintiff's session(s) on PenFed's website, he filled out a portion of the form required to apply for a home loan. In doing so, he provided at least the following categories of information to PenFed: first and last name, email address, type of loan needed, property use, purchase price, home buyer status, and credit score.

61.     During Plaintiff's visit, PenFed and Verisk and Lead Intelligence accessed and recorded his electronic communications, including the information described above, in real time. In doing so, they used the intercepted data to learn the identity and other PII and private, sensitive information of Plaintiff.

62.     Plaintiff was unaware at the time that his keystrokes, mouse clicks, and other substantive electronic communications and activities, including the information described above, were being intercepted in real time and would be disclosed to Verisk and Lead Intelligence. Nor did Plaintiff consent to share his sensitive, private information with Verisk and Lead Intelligence.

**Plaintiff and Class Members**

63.     During Plaintiff's visit, the Jornaya LeadiD feature created a video capturing Plaintiff's keystrokes, mouse clicks, and all other substantive communications provided

and actions taken on the website. Verisk and Lead Intelligence also captured the date and time of each visit, the duration of the visit, Plaintiff's IP address, his location at the time of the visit, browser type, and the operating system on his device.

64. Users, including Plaintiff, did not receive notice of, nor consent to, Verisk's and Lead Intelligence's interception or recording of their sessions on PenFed's website when they click "Get Started" on the Home Loan Promotion tab, each of the applications listed under the "Mortgage & Home Equity" tab, or similar buttons to initiate the quote or application process for home loan financial services offered on the website, even though doing so initiated the interception of their communications on the site, including the substantive information and content input into the various forms.

65. Nor do users provide informed consent when, after providing PII and other sensitive, personal information that has already been intercepted, they are asked to "accept" PenFed's Privacy Policy. Even if the consumer were to click through to the Policy's terms, the disclosures do not adequately inform consumers that their activity is being intercepted. Moreover, by the time consumers reach this point in the process, the interception has already occurred, and their personal information has already been captured without their knowledge or consent.

66. Further, because the disclosures do not adequately inform consumers that their activity is being intercepted, users also do not provide informed consent to the interception of the substantive information they provide after agreeing to any of PenFed's terms or conditions of use.

67. PenFed did not notify visitors to its websites that their keystrokes, mouse clicks and other substantive communications and activity were being recorded and shared with Verisk and Lead Intelligence. Even PenFed's more limited disclosures, which were still insufficient, were made *after* the interception had already begun.

68. No Plaintiff or Class member consented to being wiretapped on a PenFed website or to the recording and sharing of their communications with Verisk and Lead Intelligence. Furthermore, any purported consent was ineffective and insufficient because

CLASS ACTION COMPLAINT
CASE NO.

(i) the wiretapping began from the moment Plaintiff and Class members accessed the Website; and (ii) the Privacy Policy did not disclose the wiretapping or the related involvement of Verisk or Lead Intelligence.

69.     At no time before or during a user's browsing of its websites does PenFed disclose that it will record users' activities in real time.

70.     Nor does PenFed's Privacy Policy disclose that it is recording a user's activities in real time. Even if PenFed had disclosed its wiretapping at issue in its Privacy Policy, PenFed still acted without consent because PenFed does not ask for—let alone receive—users' consent until after it has already begun wiretapping them.

71.     In contrast, when Verisk and Lead Intelligence and their website-owner clients wish to disclose the Jornaya technology, they do so explicitly. Verisk's and Lead Intelligence's LeadiD Best Practices Implementation Guide provides:

> Transparency is best achieved with an ***explicit*** website disclosure notifying all visitors that you work with 3rd party technology providers, including session replay technology, and that by using your website, visitors grant ***express prior consent*** for their data to be shared with us. This language may already exist in your terms of use or privacy policy but consider whether repurposing a cookie consent pop-up or providing a separate pop-up that links to your privacy policy and terms of service, and expressly requires users to acknowledge both. Additionally, the best practice implementation of our code is to load the Jornaya LeadiD Create JavaScript ***only after*** the consumer has clicked "Accept" or otherwise opted in and provided website and cookie consent.[20]

---

[20] https://www.jornaya.com/best-practices-implementation-guidance/ (emphasis added).

CLASS ACTION COMPLAINT
CASE NO.

72.     Plaintiff and Class members were not provided with such an "explicit website disclosure," nor was the Joranya LeadiD JavaScript loaded only after consumers accepted PenFed's Privacy Policy.

73.     The LeadiD code in PenFed's website is executed regardless of the users' selection on the PenFed cookie banner.

74.     A user's personal information that is intercepted as a result of Defendants' wiretap has financial value.

75.     A study conducted over a decade ago concluded that a user's browsing history was worth $52 per year, basic contact information was worth approximately $4.20 per year, and demographic information was worth approximately $3.00 per year.[21]

76.     More detailed personal information such as an individual's portfolio of PII sells on the dark web for approximately $1,200 per person,[22] though dark web transactions understate the value of personal information because the sales do not involve the information's rightful owner.

## **TOLLING OF THE STATUTES OF LIMITATIONS**

77.     All applicable statute(s) of limitations have been tolled by Defendants' knowing and active concealment and denial of the facts alleged herein.

78.     Plaintiff and Class members could not have reasonably discovered Defendants' practices of sharing their PII until shortly before this litigation commenced.

79.     Defendants were and remain under a continuing duty to disclose to Plaintiff and Class members their practice of using or enabling the use of the Jornaya software to intercept, record, and otherwise use the relevant communications containing PII and other private, sensitive information that Plaintiff and Class members made on PenFed's website.

---

[21] "What's Your Personal Data Worth? http://designmind.frogdesign.com/blog/what039s-your-personal-data-worth.html, Jan. 18, 2011

[22] Simon Migliano, Dark Web Market Price Index (Feb. 27, 2018) https://www.nbcnews.com/tech/security/your-identity-sale-dark-web-less-1-200-n855366 (analysis showed that "the typical internet user's identity is worth about $1,200 to hackers").

CLASS ACTION COMPLAINT
CASE NO.

As a result of Defendants' active concealment of this conduct, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## **CLASS ACTION ALLEGATIONS**

80.     Plaintiff brings this lawsuit under Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3), and/or (c)(4) as representatives of a Class of all California residents who visited Penfed.org and provided personal information on PenFed's forms to receive a quote or apply for any loan or other financial service offered on the website during the period when PenFed used the Jornaya LeadiD session recording software on its website.

81.     The "Class Period" is from June 26, 2021 to the present.

82.     Plaintiff reserves the right to modify, change, or expand the class definition as appropriate based on further investigation and discovery obtained in the case.

83.     Excluded from the Class are Defendants, their employees, agents and assigns, and any members of the judiciary to whom this case is assigned, their respective court staff, the members of their immediate families, and Plaintiff's counsel.

84.     **Numerosity**: The Class consists of at least thousands of individuals geographically dispersed, making joinder impractical.

85.     **Commonality and predominance**: Common questions of law and fact exist with regard to each of the claims and predominate over questions affecting only individual Class members. Questions common to the Class include:

      a.  whether Defendant PenFed violated one or more provisions of § 631(a) of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631, et seq.;

      b.  whether Defendant Verisk violated one or more provisions of § 631(a) of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631, et seq.;

      c.  whether Defendant Lead Intelligence violated one or more provisions of § 631(a) of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631, et seq.;

CLASS ACTION COMPLAINT
CASE NO.

d.  whether Defendant PenFed invaded Plaintiff's privacy rights in violation of the California Constitution;

e.  whether Defendant Verisk invaded Plaintiff's privacy rights in violation of the California Constitution;

f.  whether Defendant Lead Intelligence invaded Plaintiff's privacy rights in violation of the California Constitution;

g.  whether Class members are entitled to actual or statutory damages for the aforementioned violations; and

h.  whether Defendants should be enjoined from engaging in such conduct in the future.

86.  **Typicality**: The claims of Plaintiff are typical of the claims of the Class because the Plaintiff, like all other Class members, visited PenFed's website and had his electronic communications intercepted and disclosed to Verisk and Lead Intelligence through PenFed's use of LeadiD.

87.  **Adequacy of representation**: Plaintiff and his counsel will fairly and adequately protect and advance the interests of Class members. Plaintiff's interests align with the interests of the Class members he seeks to represent. Plaintiff has retained competent counsel experienced in prosecuting class actions and intends to prosecute this action vigorously.

88.  **Superiority**: The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. The claims of each individual Class member are too small to make individual litigation realistic or feasible. The class action device also presents far fewer management difficulties and provides the benefits of unitary adjudication, economy of scale, and comprehensive supervision by a single court.

89.  Class Certification is also appropriate under Rules 23(b)(1), (b)(2), and/or (c)(4) because:

- The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for Defendants.

- The prosecution of separate actions by individual Class members would create a risk of adjudications that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests.

- Defendants have acted or refused to act on grounds generally applicable to the Class, making injunctive and corresponding declarative relief appropriate with respect to the Class as a whole; and

- The claims of Class members are comprised of common issues whos resolution in a class trial would materially advance this litigation.

<u>**COUNT I**</u>

**Violation of the California Invasion of Privacy Act ("CIPA")**

**Cal. Penal Code § 631**

90.    Plaintiff repeats the factual allegations contained in the foregoing paragraphs as if fully set forth herein.

91.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendants.

92.    To establish liability under section 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
>
> *Or*

Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

*Or*

Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

*Or*

Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

93.    Section 631(a) is not limited to phone lines but also applies to newer technologies such as computers, the Internet, and email.

94.    CIPA provides that "[a]ny person who has been injured by a violation of this chapter may bring an action against the person who committed the violation." Cal. Penal Code § 637.2(a).

95.    The Jornaya LeadiD product is a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct at issue.

96.    The Jornaya LeadiD product intercepts Class members' communications in transit while passing over the lines of internet communication by recording them in real time as the user enters information, even before the user clicks a button to submit the completed form to PenFed though its website.

97.    **PenFed's Violations**: At all relevant times, by using the Jornaya LeadiD technology, PenFed:

a.   aided, agreed with, employed, and conspired with Verisk and Lead Intelligence to implement the Jornaya technology and to accomplish the wrongful conduct at issue here.

98.   **Verisk's Violations**: At all relevant times, by providing LeadiD service to PenFed, Verisk:

a.   intentionally tapped or made an unauthorized connection with, electrically or otherwise, the lines of internet communication between Plaintiff and Class members on the one hand, and PenFed's website on the other hand; and

b.   willfully and without the consent of all parties to the communication, read or attempted to read or learn the contents or meaning of electronic communications of Plaintiff and Class members, while the electronic communications were in transit or passing over any wire, line or cable or were being sent from or received at any place within California.

99.   **Lead Intelligence's Violations**: At all relevant times, by providing LeadiD service to PenFed, Lead Intelligence:

a.   intentionally tapped or made an unauthorized connection with, electrically or otherwise, the lines of internet communication between Plaintiff and Class members on the one hand, and PenFed's website on the other hand; and

b.   willfully and without the consent of all parties to the communication, read or attempted to read or learn the contents or meaning of electronic communications of Plaintiff and Class members, while the electronic communications were in transit or passing over any wire, line or cable or were being sent from or received at any place within California.

100.   Plaintiff and Class members did not consent to any of Defendants' violations of the CIPA as alleged above, including any of their actions in implementing Veriks's and Lead Intelligence's wiretaps on PenFed's website or their intentional access, interception,

CLASS ACTION COMPLAINT
CASE NO.

reading, learning, recording, and collection of Plaintiff's and Class members' electronic communications.

101.   Defendants' violation of section 631(a) constitutes an invasion of privacy.

102.   Unless enjoined, Defendants will continue to commit these illegal acts. Plaintiff and other members of the Class continue to use or desire to use the internet, including PenFed's website, to search for information about and shop for loans and various other financial services, but they do not want their provision of personal data informing a financial service quote or application to be wiretapped again.

103.   Plaintiff and Class members seek all relief available under Cal. Penal Code § 637.2, including injunctive relief and statutory damages of $5,000 per violation.

## COUNT II

### Invasion of Privacy

### California Constitution, Art. 1, § 1

104.   Plaintiff repeats the factual allegations contained in the foregoing paragraphs as if fully set forth herein.

105.   Plaintiff brings this claim individually and on behalf of the members of the Class against Defendants.

106.   Plaintiff and Class members have a strong interest in: (1) precluding the dissemination or misuse of their sensitive, confidential PII; and (2) making personal decisions or conducting personal activities without observation, intrusion, or interference, including the right to visit and interact with various Internet sites without being subjected to wiretaps without Plaintiff's and Class members' knowledge or consent.

107.   Defendants wrongfully intruded upon Plaintiff's and Class members' seclusion in violation of California law. Plaintiff and Class members reasonably expected that the private personal information, including sensitive and confidential PII, that they entrusted to PenFed would be kept private and secure, and would not be disclosed to any unauthorized third party or for any improper purpose.

CLASS ACTION COMPLAINT
CASE NO.

108.   At all relevant times, by implementing Verisk's and Lead Intelligence's wiretaps on PenFed's website, each Defendant intentionally invaded Plaintiff's and Class members' privacy rights under the California Constitution, and procured, aided, or enabled the other Defendant to do so.

109.   Defendants unlawfully invaded Plaintiff's and Class members' privacy rights by:

    a.  harvesting their personal information, including sensitive, confidential PII, and transmitting it to unauthorized third parties or for improper purposes;

    b.  enabling the disclosure of personal and sensitive facts about them in a manner highly offensive to a reasonable person; and

    c.  enabling the disclosure of personal and sensitive facts about them without their informed, voluntary, affirmative, and clear consent.

110.   A reasonable person would find it highly offensive that Defendants received, collected, and stored Plaintiff's and Class members' sensitive and confidential PII without their consent.

111.   Plaintiff and Class members did not consent to any of Defendants' alleged misconduct, including any of their actions in implementing Verisk's and Lead Intelligence's wiretaps on PenFed's website or their intentional access, interception, reading, learning, recording, and collection of Plaintiff's and Class members' electronic communications.

112.   In failing to adequately protect Plaintiff's and Class members' personal information, Defendants acted knowingly and in reckless disregard of their privacy rights. Defendants were aware that using LeadiD on Penfed.org would cause users' private information to be intercepted and recorded by and shared with Verisk and Lead Intelligence, an unauthorized third party. Nevertheless, PenFed chose to use, and Verisk and Lead Intelligence chose to make LeadiD available for use, on the website without users' consent. Defendants also knew or should have known that their conduct would be highly offensive to a reasonable person in Plaintiff's position.

CLASS ACTION COMPLAINT
CASE NO.

113.   Defendants' unlawful invasions of privacy damaged Plaintiff and Class members. As a direct and proximate result of these invasions, Plaintiff and Class members suffered mental distress, and their reasonable expectations of privacy were frustrated and defeated.

114.   This invasion of privacy is serious in nature, scope, and impact.

115.   This invasion of privacy constitutes an egregious breach of the social norms underlying the privacy right.

116.   Plaintiff and Class members therefore seek all relief available for an invasion of privacy in violation of Article I, Section 1 of California's Constitution.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests the Court enter judgment against Defendants through an order:

a.   Certifying the Class under Rule 23 and naming Plaintiff as the representative of the Class and Plaintiff's attorneys as Class Counsel;

b.   Declaring that the Defendants' conduct violates the laws and standards referenced above;

c.   Finding in favor of Plaintiff and the Class on all counts asserted herein;

d.   Granting Plaintiff and the Class compensatory, statutory, or punitive damages or restitution;

e.   Awarding prejudgment and post-judgment interest on all amounts awarded to the fullest extent allowed under the law;

f.   Entering appropriate injunctive relief;

g.   Awarding Plaintiff and the Class their reasonable attorneys' fees, expenses, and costs of suit; and

h.   Such other and further relief as the Court deems necessary or appropriate.

CLASS ACTION COMPLAINT
CASE NO.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims and issues so triable.

Dated: June 16, 2023                    Respectfully submitted,

**GIRARD SHARP LLP**

*/s/  Simon S. Grille*
Adam E. Polk (State Bar No. 273000)
apolk@girardsharp.com
Simon S. Grille (State Bar No. 294914)
sgrille@girardsharp.com
Nina Gliozzo (State Bar No. 333569)
ngliozzo@girardsharp.com
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Sean Greene (SBN 328718)
**GIRARD SHARP LLP**
222 Pacific Coast Highway, Floor 10
El Segundo, CA 90245
Telephone: (415) 544-6453
*sgreene@girardsharp.com*

Christopher J. Cormier (*Pro Hac Vice* to be filed)
**BURNS CHAREST LLP**
4725 Wisconsin Ave., NW, Suite 200
Washington, DC 20016
Telephone: (202) 577-3977
ccormier@burnscharest.com

CLASS ACTION COMPLAINT
CASE NO.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Hannah M. Crowe (*Pro Hac Vice* to be filed)
**BURNS CHAREST LLP**
900 Jackson Street, Suite 500
Dallas, TX 75202
Telephone: (469) 904-4550
hcrowe@burnscharest.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT
CASE NO.